AMENDED   PETITION

JUL 2 6 2010

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

STEFON  MORANT , Petitioner,
**Full Name and Prisoner Number**

900  Highland  Ave
**Complete Prison Address (Place of Confinement)**

CHESIRE, CT  06410

Case No. 3:09 cv 2082 (JBA)
(To be supplied
by the Court)

v.

COMMISSIONER , Respondent,
(Name of Warden or authorized person
having custody of petitioner)
(Do not use *et al.*)

and

_____, Additional Respondent.
(List additional persons having custody
of petitioner, if any)

Note: If the applicant is challenging a judgment which imposed a sentence to be served
in the future, applicant must fill in the name of the state where the judgment of
conviction was entered. If the applicant has a sentence to be served in the future under
a federal judgment, which he/she wishes to challenge, he/she should file a motion
under 28 U.S.C. § 2255, in the federal court which entered the judgment.

F-1

## CONVICTION BEING CHALLENGED

1) Name and location of the court which entered the judgment of conviction you are challenging NEW HAVEN SUPERIOR COURTHOUSE

235 CHURCH STREET - NEW HAVEN, CT 06511

2) Date judgment of conviction was entered JUNE 8, 1994

3) Case number (in state court) CR6- 352995

4) Type and length of sentence imposed 70 YRS

5) Nature of the offense involved (all counts) 2 COUNTS OF FELONY

MURDER ( C.G.S. 53A -54c)

6) What was your plea? (check one)
Not Guilty ⨯ Guilty __ Nolo Contendere __

7) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to:

N/A

8) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement

N/A

9) Kind of trial (check one) Jury ⨯ Judge only __

10) Did you testify at trial? Yes __ No ⨯

2

F2-

## DIRECT APPEAL

11) Did you appeal from the judgment of conviction?     Yes _X_ No __

12) If you did not appeal, explain briefly why you did not: _____ N/A _____

_____

_____

   (a)   Did you seek permission to file a late appeal? Yes __ No __  N/A

13) If you did appeal, answer the following:

   (a)   Name of court: CONN. SUPR. COURT

   (b)   Docket number (if you know): 242 CONN 66 (1997)

   (c)   Result (attach a copy if you have one): DENIED (ATTACHED)

   (d)   Date of result (if you know): AUGUST 26, 1997

   (e)   Citation to the case (if you know): 242 CONN. 66 (1997)

   (f)   Grounds raised: _____

1 - INSUFFICIENT EVIDENCE

2 - FAILURE TO ORDER PSYCHIATRIC EXAMINATION OF STATE'S KEY WITNESS

3 - IMPROPER JURY INSTRUCTIONS ON WITNESS CREDIBILITY AND REASONABLE DOUBT

14) If your appeal was denied by the Connecticut Appellate Court, did you file a petition for certification with the Connecticut Supreme Court?   Yes___   No___  N/A

15) If you sought certification, answer the following:

   (a)   Date of decision (if you know): N/A

   (b)   Citation to the case (if you know): N/A

   (c)   Grounds raised (or attach a copy of the petition for certification if you have

F3

one): _____ N/A _____

_____

_____

16). Did you file a petition for certiorari in the United States Supreme Court?
Yes_____ No _X_

If yes, answer the following:

(a) Docket number (if you know): _____ N/A _____

(b) Result: _____ N/A _____

_____

(c) Date of result (if you know): _____ N/A _____

(d) Citation to the case (if you know): _____ N/A _____

(e) Grounds raised: _____ N/A _____

_____

_____

_____

_____

4

F4

a breach of the peace.[16] *State* v. *McDowell*, supra, 241 Conn. 421 (*Berdon, J.*, dissenting). The state should be bound by those findings and the defendant's motion to dismiss based upon collateral estoppel should have been granted.

Accordingly, for the reasons set forth herein, I dissent.

---

## STATE OF CONNECTICUT *v.* STEFON MORANT
### (SC 15194)

Borden, Berdon, Norcott, Katz and McDonald, Js.

*Syllabus*

Convicted of two counts of the crime of felony murder, the defendant appealed to this court claiming, inter alia, that the evidence presented was insufficient to support his conviction because the state failed to prove that, when the victims were killed, he had been engaged in committing a robbery, an essential element of the crime of felony murder as charged. *Held:*

1. There was no merit to the defendant's claim that, because the drugs and money that he took from the victims' apartment belonged to him, he could not be convicted of robbery; the property the defendant took was contraband, as defined by statute (§ 54-36a [1]), a person commits a larceny when he forcibly takes contraband from another person's possession, and, a showing that the victim had custody or control over the appropriated property being sufficient to support a charge of larceny, it could not be said that the defendant, under any reasonable interpretation of the facts, had a superior right to the property to justify the use of force in its recovery.

2. The trial court did not abuse its discretion in refusing to order a psychiatric examination to determine whether a certain state's witness was competent to testify or in determining that the witness was competent, and the defendant was afforded the opportunity to cross-examine that witness effectively; that court had an opportunity to evaluate the witness at a preliminary hearing where the witness consented to the disclosure of his psychiatric records, the witness' testimony was corroborated by other evidence and the witness testified in a clear, coherent and responsive manner.

[16] See footnote 1 of this opinion.

3. The defendant could not prevail on his unpreserved claim that the trial court improperly instructed the jury regarding the credibility of his alibi witnesses, he having failed to allege a constitutional violation.

4. Contrary to the claim raised by the defendant for the first time on appeal, the trial court correctly conveyed the concept of reasonable doubt to the jury.

Argued March 20—officially released August 26, 1997

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of murder and felony murder, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Hadden, J.*; verdict and judgment of guilty of two counts of felony murder, from which the defendant appealed to this court. *Affirmed.*

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Stefon Morant, appeals from the judgment of conviction, after a jury trial, of two counts of felony murder in violation of General Statutes (Rev. to 1989) § 53a-54c.[1] The trial

[1] General Statutes (Rev. to 1989) § 53a-54c provides: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause

stopped on Howard Avenue near the victims' apartment. The defendant stated that Lewis said "he had to take care of some business" and would be right back, and that Lewis then entered the apartment building while the defendant waited in the car. The defendant further stated that Lewis was perspiring when he came running from the apartment building to the car five or ten minutes later.

The defendant also told police that Lewis sold narcotics and that, when he and Lewis stopped on Howard Avenue, he thought Lewis was going to take care of some drug-related business. The defendant stated that the next day he learned that there had been a murder on Howard Avenue, and that a few days later, Lewis told the defendant that Lewis "did what [he] had to do" because one of the victims had owed Lewis "a couple dollars." The defendant further stated that at some later time he observed Lewis throw the gun that Lewis had used to commit the murders into the Mill River under the Chapel Street Bridge in New Haven.

I

The defendant claims that the evidence was insufficient to support his convictions of felony murder. The defendant was charged with committing a robbery with another person and in the course of and in furtherance of that robbery, the defendant or the other person caused the deaths of Turner and Fields. The defendant argues that the state's evidence does not establish that he engaged in a robbery, and, therefore, that the state failed to prove an essential element of the felony murder charges. Specifically, the defendant argues that he cannot be convicted of committing of a robbery because the evidence establishes that the drugs and money that he and Lewis took from Turner's apartment belonged to him and Lewis. We find no merit to the defendant's claim.

In order to prove the commission of a robbery, the state must prove that the defendant used or threatened the use of force in the commission of a larceny. See General Statutes § 53a-133; *State* v. *Croswell*, 223 Conn. 243, 250, 612 A.2d 1174 (1992). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an *owner*. . . ." (Emphasis added.) General Statutes § 53a-119. "An 'owner' means any person who has a right to possession superior to that of a taker, obtainer or withholder." General Statutes § 53a-118 (a) (5); see *State* v. *Taylor*, 196 Conn. 225, 229, 492 A.2d 155 (1985).

We agree with the defendant that the evidence establishes that he and Lewis operated a drug business and that Turner stored the drugs and money in his apartment as a part of the business. The defendant further asserts, however, that he was the "owner" of the drugs and money taken from Turner's apartment, and that he, therefore, could not commit larceny of his own property. We disagree.

The property in which the defendant claims an ownership interest is "contraband" as defined in General Statutes § 54-36a (1): "[A]ny property, the possession of which is prohibited by any provision of the general statutes . . . ." We note that we have never answered the precise question of whether a person may legally regain contraband from another's possession. Although we recognize that General Statutes § 53a-118 (a) (1) could be read to include contraband under the definition of property; (" '[p]roperty' means any money, personal property . . . or article of value of any kind"); we have serious doubts about allowing a person to claim a property interest in contraband, the possession of which is per se illegal. A person should not be allowed to vest himself with a possessory interest by crime or to invoke the law in order to disengage himself from

Case 3:09-cv-02082-JBA   Document 18   Filed 02/04/11   Page 7 of 24

son, 56 N.Y.2d 868, 869, 438 N.E.2d 1109, 453 N.Y.S.2d 394 (1982); *State* v. *Land*, 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984)." *State* v. *Crosswell*, supra, 254.

It cannot be said, therefore, that the defendant, under any reasonable interpretation of the facts in this case, had a superior right to the cocaine and money than Turner and Fields thereby justifying the use of force in the recovery of the property. We reject, therefore, the defendant's claim that there was insufficient evidence to convict him of two counts of felony murder.

## II

The defendant claims that the trial court improperly refused to order a psychiatric examination of the state's witness, Ruiz, whose psychiatric records demonstrated a history of mental illness, delusions and narcotics use. The defendant argues that in so doing the trial court abused its discretion by determining that Ruiz was competent to testify and also deprived him of the opportunity to cross-examine Ruiz effectively in violation of his sixth amendment right to confrontation.[2] We conclude that the trial court did not abuse its discretion when it denied the defendant's motion for a psychiatric examination and found Ruiz competent to testify. We also conclude that the defendant was afforded the opportunity to cross-examine Ruiz effectively.

It is well settled that a defendant's constitutional right to confront and cross-examine witnesses against him includes the opportunity to explore the witness' mental capacity to observe, recollect and narrate an occur-

[2] The sixth amendment to the federal constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Article first, § 8, of our state constitution contains a virtually identical provision. Because the defendant has not provided any independent analysis under the state constitution, we limit our analysis to the federal constitution. *State* v. *Dyson*, 238 Conn. 784, 794, 680 A.2d 1306 (1996).

rence. *State* v. *Esposito*, 192 Conn. 166, 176, 471 A.2d 949 (1984). To ensure that this right is protected, we have established a well recognized procedure. On a proper showing by the defendant that a witness' capacity may be substantially diminished because of a mental condition, the state may be required to obtain the consent of the witness for disclosure of the witness' privileged psychiatric records; General Statutes § 52-146e; or the witness' testimony may be stricken. *State* v. *Bruno*, 236 Conn. 514, 522–23, 673 A.2d 1117 (1996); *State* v. *Pratt*, 235 Conn. 595, 607, 669 A.2d 562 (1995); *State* v. *D'Ambrosio*, 212 Conn. 50, 61, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); *State* v. *Hufford*, 205 Conn. 386, 400–406, 533 A.2d 866 (1987); *State* v. *Esposito*, supra, 179–80; *State* v. *Storlazzi*, 191 Conn. 453, 455–63, 464 A.2d 829 (1983).

In this case, before Ruiz testified, the defendant requested access to Ruiz' psychiatric records, and the court held a hearing during which the state obtained Ruiz' consent to allow the trial court to conduct an in camera review of those records.[3] At that hearing, Ruiz testified that he was twenty years old and had been continuously incarcerated since the age of seventeen. Ruiz stated that he had been treated during this period for alcohol and drug abuse and had undergone psychiatric counseling. Ruiz testified that at no time prior to incarceration had he ever been treated by a counselor, or for alcohol and drug abuse. Ruiz also agreed to permit the trial court to turn over any records to defense counsel that the court deemed necessary.

After conducting an in camera review of Ruiz' department of correction file, the trial court found that the

[3] The state concedes that the defendant would be able to make the requisite showing of a "reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right to confrontation . . . ." *State* v. *Esposito*, supra, 192 Conn. 179.

E7

cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

In *State v. Weinberg*, supra, 215 Conn. 243–44, we concluded that rule 601 of the Federal Rules of Evidence, "as applied by the federal courts, establishes a reasoned approach to determining the admissibility of a witness' testimony. . . . [W]here the competency of a witness is challenged, the threshold question to be answered by the court is whether the testimony of that witness is minimally credible. If the testimony of a witness passes the test of minimum credibility, and is otherwise relevant, the testimony is admissible and the weight to be accorded it, in light of the witness' incapacity, is a question for the trier of fact." Rule 601 "reflects a strong presumption in favor of witness competency." *Borawick v. Shay*, 68 F.3d 597, 601 (2d Cir. 1995); *United States v. Khoury*, 901 F.2d 948, 966 (11th Cir. 1990); *United States v. Bloome*, 773 F. Sup. 545, 546 (E.D.N.Y. 1991).

The trial court had the opportunity to observe Ruiz at the preliminary hearing in which Ruiz consented to the disclosure of his psychiatric records and when he was called to testify. The court, therefore, had a firsthand opportunity to evaluate whether Ruiz could understand the questions posed to him and could respond in a coherent manner. There is nothing in the transcript to indicate that the trial court's evaluation of Ruiz' mental capacity and the court's subsequent ruling constituted an abuse of discretion. See *State v. Weinberg*, supra, 215 Conn. 244 (even where parties agreed to examination of witness by independent psychiatrist and psychiatrist concluded that witness was incompetent to testify, trial court did not abuse its discretion in concluding otherwise after observing witness); *State v. Stankowski*, 184 Conn. 121, 140, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981) (trial court has ability to observe witness' demeanor and ability to

answer questions). The defendant argues, however, that because Ruiz' file showed that Ruiz had been prescribed Haldol only twenty-six days prior to his testimony, the trial court abused its discretion in determining that Ruiz was competent to testify. We disagree. The defendant failed to present any evidence that this prescription drug affected Ruiz, and Ruiz testified that he was not currently taking any drugs. Moreover, our review of the transcript also confirms that Ruiz repeatedly testified in a cogent and responsive manner.

Our case law demonstrates that the " 'drastic measure' " of ordering a psychiatric examination; *United States v. Riley*, 657 F.2d 1377, 1387 (8th Cir. 1981), cert. denied, 459 U.S. 1111, 103 S. Ct. 742, 74 L. Ed. 2d 962 (1983), quoting *United States v. Russo*, 442 F.2d 498, 502 (2d Cir. 1971), cert. denied, 404 U.S. 1023, 92 S. Ct. 669, 30 L. Ed. 2d 673 (1972); should be taken only upon "compelling reasons." *State v. Dabkowski*, 199 Conn. 193, 197–98 n.5, 506 A.2d 118 (1986); see *State v. Manini*, 38 Conn. App. 100, 119, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995). "In *State v. Dabkowski*, [supra, 193] . . . [we] . . . rejected the 'Wigmore rule,' which suggests that a 'complaining witness, in a case relating to a sex offense, should always be compelled to submit to a psychiatric examination.' See 3A J. Wigmore, Evidence (Chadbourn Rev. 1970) § 924a." *State v. Manini*, supra, 118. Such an examination should not be ordered if the trial court, " 'after hearing the testimony of the witness, has no doubt of [the witness'] mental soundness.' " *State v. Canady*, supra, 187 Conn. 291, quoting *State v. Vars*, 154 Conn. 255, 268, 224 A.2d 744 (1966); see also *State v. Manning*, supra, 162 Conn. 115. In making such a determination, the trial court may make use of its own observations of the witness. *State v. Canady*, supra, 292.

Moreover, Ruiz' factual reports were independently corroborated by other evidence presented by the state,

State v. Morant

The defendant does have a right under the confrontation clause "to expose to the jury the facts from which jurors, as the sole triers of facts and credibility, [can] appropriately draw inferences relating to the credibility of the [state's] witnesses." *Davis v. Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Ouellette*, 190 Conn. 84, 101–103, 459 A.2d 1005 (1983). The confrontation clause requires that "[if] the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness." *State v. Pierson*, 201 Conn. 211, 227, 514 A.2d 724 (1986), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989). We therefore review the defendant's claim, but conclude that the defendant has not clearly demonstrated a constitutional violation that deprived him of a fair trial.

While the competency of a witness is for the trial court to evaluate, the credibility of a witness is for the jury to determine. See *State v. Weinberg*, supra, 215 Conn. 244; *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir.), cert. denied, 493 U.S. 841, 110 S. Ct. 127, 107 L. Ed. 2d 88 (1989); *United States v. Bloome*, supra, 773 F. Sup. 546. The trial court may, in its discretion, limit the cross-examination of a witness so long as the defendant's right to confrontation is not impaired. *State v. Asherman*, 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). This discretion includes "matter[s] of discovery [concerning mental capacity] where material

adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State v. Golding*, supra, 213 Conn. 239–40.

State v. Morant

is sought for impeachment purposes." *State v. Esposito*, supra, 192 Conn. 179; *State v. Januszewski*, 182 Conn. 142, 171, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). We have held that the, trial court has broad discretion in deciding whether to order the psychiatric examination of a witness for the purposes of impeachment. See *State v. Piskorski*, supra, 177 Conn. 716–17; *State v. Manini*, supra, 38 Conn. App. 117–19; see also *United States v. Fountain*, 840 F.2d 509, 517 (7th Cir.), cert. denied, 488 U.S. 982, 109 S. Ct. 533, 102 L. Ed. 2d 564 (1988); *United States v. Pino*, 827 F.2d 1429, 1430 (10th Cir. 1987); *United States v. Raineri*, supra, 670 F.2d 709.

Again, it has been emphasized that the discretion to condition a witness' testimony on the witness' submission to a psychiatric examination "should be exercised sparingly." *United States v. Gutman*, 725 F.2d 417, 420 (7th Cir.), cert. denied, 469 U.S. 880, 105 S. Ct. 244, 83 L. Ed. 2d 183 (1984). "The [trial] court was entitled to be leery of both psychiatric examinations of witnesses and psychiatric testimony about witnesses, because the jury can observe for itself . . . the witness's behavior. Criminal trials are complex enough without turning them into collateral investigations of the witnesses— investigations that would not only drag out trials and confuse jurors but also discourage people from serving as witnesses." *United States v. Fountain*, supra, 840 F.2d 517.

The trial court provided the defendant with Ruiz' entire department of correction file, which contained all the records of psychiatric counseling and treatment that Ruiz had received up to the time of trial. The defendant extensively cross-examined Ruiz regarding his psychiatric history, his criminal background and his recollection of the events of October 10 and 11, 1990. On cross-examination, Ruiz stated that he had lied to correction department authorities and doctors about

tion at trial, but seeks review pursuant to *State v. Golding*, supra, 213 Conn. 239–40.[11] The defendant recognizes that this court has previously upheld the challenged instruction; *State v. Ryerson*, 201 Conn. 333, 348, 514 A.2d 337 (1986); yet argues that "the instruction is outmoded and unfair by today's standards, and should be disapproved." The defendant argues that the instruction violated the presumption of innocence and his right to present a defense as established by the fifth, sixth and fourteenth amendments to our federal constitution and article first, § 8, of our state constitution. The defendant's claim is unavailing.

A defendant cannot transform a nonconstitutional claim into a constitutional claim by placing a label on it. "[C]laimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature. *State v. Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991)." *State v. Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). Accordingly, we conclude that the defendant has not alleged a constitutional violation.

### IV

The defendant claims that the trial court improperly instructed the jury on the concept of reasonable doubt

---

defendant's alleged presence in North and South Carolina at the time that the murders were committed. In connection with this alibi evidence please keep in mind that the kind of evidence relating to a claimed alibi frequently will, and in this case did, consist, in part, at least, of the testimony of witnesses who are related to or friends or associates of the accused and who may, therefore, be held to be in a greater or lesser degree interested in the outcome of the case.

"The liability of the human mind to make honest mistakes as to dates and times when certain events occur is a matter of common knowledge. Interested persons sometimes jump quickly to the time of an occurrence when such a time would be favorable to some desirable end or persons may at a later time be led to make a mistake when their memory is no longer certain in respect to such date and time. This evidence should be given the weight that you think it deserves and should be considered by you along with all the other evidence in the case in reaching a verdict."

[11] See footnote 7 of this opinion.

in violation of his rights to due process and a jury trial guaranteed by the federal and state constitutions. The defendant did not raise this claim at trial, but again seeks review pursuant to *State v. Golding*, supra, 213 Conn. .239-40, and the plain error doctrine.[12] Because the defendant alleges the violation of a fundamental constitutional right, we will review his claim. We previously have rejected nearly identical claims, and we here adhere to our prior decisions.

The defendant argues that the trial court diluted his presumption of innocence by two passages in its instructions to the jury.[13] The defendant points to the

---

[12] "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State v. Taylor*, 239 Conn. 481, 502, 687 A.2d 489 (1996).

[13] The trial court's complete instruction to the jury on the concept of reasonable doubt was as follows: "The law says that the state must not only prove [the defendant] guilty, but must prove him guilty beyond a reasonable doubt. It is not enough for the state to make out a case of probable guilt, but the burden on the state, which never shifts, is to prove the defendant guilty beyond a reasonable doubt. It is not required that the state prove the defendant guilty beyond all possible doubt.

"Now, a reasonable doubt means this, it is a doubt for which a reasonable man or woman can give a valid reason. The burden of proving his guilt beyond a reasonable doubt requires the state to produce sufficient evidence to create, in your minds, a strong and abiding conviction of the guilt of the defendant. In other words, it is the law that the evidence must be so sufficient that it would leave no room in your mind for any reasonable hypothesis of the innocence of the accused. Proof of guilt beyond a reasonable doubt must exclude every reasonable supposition of innocence, but it need not exclude every possible supposition of innocence.

"A reasonable doubt is not a doubt raised by one who questions for the sake of raising a doubt. A reasonable doubt is not a surmise or speculation or conjecture or an imaginary doubt. A reasonable doubt is not captious or a frivolous doubt nor is it a doubt which is raised by the ingenuity of counsel or by a juror and unwarranted by the evidence nor is it a doubt prompted by sympathy for the defendant. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or the lack of evidence.

"Absolute certainty in the affairs of life is almost never attainable and the law does not require absolute certainty to authorize a conviction. What

## POST-CONVICTION PROCEEDINGS

17) Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any state court?     Yes X No __

18) If your answer to Question 17 was "Yes," give the following information:

(a) FIRST petition, application or motion.

(1) Name of court: NEW HAVEN SUPERIOR COURT

(2) Docket number (if you know): CV - 398736  (1997)

(3) Nature of proceeding: PETITION FOR NEW TRIAL

(4) Grounds raised: 1- NEWLY DISCOVERED EVIDENCE

2 - CONVICTION BASED ON FALSE TESTIMONY

3 - FAILURE TO GRANT MATERIAL WITNESS IMMUNITY

4 - FAILURE TO ADMIT EXCULPATORY EVIDENCE

(5) Did you receive an evidentiary hearing on your petition, application or motion? Yes X No __

(6) Result: DENIED

(7) Date of result (if you know): FEBRUARY 12, 2002

(8) Did you appeal the result to the highest state court having jurisdiction? Yes X No __

If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order)

CONNECTICUT APPELLATE SUPREME COURT
68 CONN. APP 137
260 CONN. 917 (2002)  DENIED

(9) If you did not appeal, briefly explain why you did not: _____

5

FII

(10)   If your appeal was decided by the Connecticut Appellate Court, did you file a petition for certification to appeal the decision to the Connecticut Supreme Court? Yes _X_ No ___

(11)   If you sought certification, give the citation and date of the court's decision or attach a copy of the decision.  Also attach a copy of the petition for certification or list the issues for which certification was sought.

CONNECTICUT SUPREME COURT

260 CONN. 914 (2002) DENIED

(b) As to any SECOND petition, application or motion, give the following information:

(1)   Name of court: NEW HAVEN SUPERIOR COURT

(2)   Docket number (if you know): CV-02-0485200

(3)   Nature of proceeding: PETITION FOR HABEAS CORPUS

(4)   Grounds raised: 1 - INEFFECTIVE ASS. OF COUNSEL

2 - SUPPRESSION OF EVIDENCE

3 - ACTUAL INNOCENCE

4 - DENIAL OF RIGHT TO FAIR TRIAL

5 - ACTUAL INNOCENCE

(5)   Did you receive an evidentiary hearing on your petition, application or motion? Yes _X_ No __

(6)   Result: DENIED

(7)   Date of result (if you know): JUNE 12, 2007

(8)   Did you appeal the result to the highest state court having jurisdiction? Yes _X_ No __

If you did appeal, give the name of the court where the appeal was filed,

6

F12

the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order)

_CONNECTICUT App. COURT_

_117 CONN. App 279 (2009)_

(9)   If you did not appeal, briefly explain why you did not: _N/A_

(10)   If your appeal was decided by the Connecticut Appellate Court, did you file a petition for certification to appeal the decision to the Connecticut Supreme Court? Yes _X_ No ___

(11)   If you sought certification, give the citation and date of the court's decision or attach a copy of the decision. Also attach a copy of the petition for certification or list the issues for which certification was sought.

c)   As to any THIRD petition, application or motion, give the following information:

(1)   Name of court: _N/A_

(2)   Docket number (if you know): _N/A_

(3)   Nature of proceeding: _N/A_

(4)   Grounds raised: _N/A_

7

PSC-01-0354

68 CA 137

| NO. AC 20959 | : | SUPREME COURT |
| STEFON MORANT | : | STATE OF CONNECTICUT |
| V. | : | AT HARTFORD |
| STATE OF CONNECTICUT | : | MARCH 14, 2002 |

## PETITION FOR CERTIFICATION

To the Honorable Chief Justice and Associate Justices of the Supreme Court:

Petitioner, Stefon Morant, respectfully represents that he is the appellant in the above-noted action and that he is aggrieved by the Appellate Court's decision in <u>Morant v. State Of Connecticut</u>, 68 Conn. App. 137 (2002), affirming the judgment of the trial court, denying the first count of his fifth amended petition for a new trial, and that he desires to appeal from said decision.

## I.   QUESTIONS PRESENTED

1. Did the Appellate Court err in holding that the trial court, Blue, J., did not abuse its discretion in denying the fifth amended petition for a new trial?

2. Did the Appellate Court err in holding that the trial court, Blue, J., properly sustained witness Ovil Ruiz's invocation of the privilege against self-incrimination?

3. Did the Appellate Court err in holding that the trial court, Blue, J., properly refused to order the State to grant Ruiz immunity and also properly refused to grant Ruiz immunity on its own?

## II.   BASIS FOR CERTIFICATION

This Court should grant certification because **SUPERIOR COURT**

Judicial District of New Haven

**FILED**

MAR 14 2002

1.                                    **CHIEF CLERK'S OFFICE**

Court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the Supreme Court's supervision, and/or because a question of great public importance is involved. Practice Book Sections 84-2(3)(4).

## III. **SUMMARY OF THE CASE**

In 1994, Petitioner was convicted by a jury of two counts of felony murder in violation of General Statutes (Rev. to 1989) 53a-54c, relative to the shooting deaths of two men in New Haven on October 11, 1990. The trial court (Hadden, J.) later rendered judgment in accordance with the verdict and sentenced Petitioner to seventy years imprisonment. This Court affirmed the conviction on appeal. State v. Morant, 242 Conn. 666 (1997).

In April, 1997, Petitioner filed a pro se petition for a new trial pursuant to General Statutes Section 52-270, Practice Book Section 42-55 and the federal and state constitutions. The petition charged that State's witness Ovil Ruiz had admitted that Petitioner and one, Scott Lewis[1] were innocent of the killings and that such evidence would likely produce a different result at a new trial.[2]

In April, 1999, Petitioner, assisted by counsel, filed a second amended petition for a new trial. Following an evidentiary hearing,

---

[1]Lewis was tried separately for the killings, convicted of two counts each of murder and felony murder, and sentenced to 140 years imprisonment. State v. Lewis, 245 Conn. 779, 780-81 (1998)

[2]The admission came in a letter from Ruiz to Lewis, wherein Ruiz stated that he told the FBI that Petitioner and Lewis were innocent and that he lied at trial when he implicated them.

F15

2.

the Court (Hadden, J.T.R.) issued a memorandum of decision in July,
1999, denying count two of the petition.[3] Count two sought a new
trial on the basis of newly discovered alibi evidence.

On various dates between October, 1999, and May, 2000, an evi-
dentiary hearing was held before the Court (Blue, J.) on count one
of the third amended petition for a new trial. Count one amplified
the original pro se petition, charging principally that Petitioner
was entitled to a new trial because information developed by the
FBI revealed that Ovil Ruiz lied at Petitioner's trial, perhaps at
the behest of New Haven police detective Vincent Raucci.

During the litigation before Judge Blue, the petition was amend-
ed twice, so as to include the testimony of former detective ser-
geant Michael J. Sweeney and other witnesses, including Petitioner.
In June, 2000, the Court (Blue, J.) issued a memorandum of decision
denying count one of the fifth amended petition.

On February 12, 2002, the Appellate Court affirmed the judgments
of the two trial courts. Following the granting of an application
for waiver of fees, costs and expenses and for appointment of coun-
sel on appeal on March 6, 2002, this petition was filed.

## IV.   ARGUMENT

This case concerns allegations of the gravest sort, namely, that
a State's witness intentionally implicated two innocent people in a
double homicide, perhaps at the behest of a police officer. It also

---

[3]In the midst of the hearing, the Court declared a mistrial on
count one and Petitioner withdrew count three. Thus, the Court's
memorandum of decision addressed only count two.

3.

concerns the troubling issue of whether the State should be permitted to use a prosecution witness as both a sword and shield.

### 1.) The Appellate Court Erred In Holding That The Trial Court Blue, J., Did Not Abuse Its Discretion In Denying The Fifth Amended Petition For A New Trial.

In order to properly understand this claim of error, certain facts must be brought into relief. First, Ovil Ruiz was the State's key witness at Morant's criminal trial. Without his testimony the State could not have secured a conviction. Second, during the investigation, Ruiz gave two statements to detective Raucci. The first, in January, 1991, was very limited. It revealed that Ruiz told Raucci that he had overheard Morant and Lewis talking about the killings and that he had been present when Lewis threw what appeared to be a gun into a river. The second, in May, 1991, which was given in the presence of counsel, contained substantially more information. It revealed, inter alia, that Ruiz had obtained for Morant and Lewis the guns used in the crime, that he had traveled with them to the victim's apartment building where he waited outside and that he had been the "getaway driver" of the car. Third, Ruiz's trial testimony mirrored his May statement. Fourth, in an effort to diffuse his impeachment, the State had Ruiz explain the reason for the wide divergence between the January and May statements. Ruiz told the jury that while he had volunteered the information to Raucci, he was still afraid that early disclosure of all that he knew would lead to criminal charges. Raucci later confirmed the "brief" nature of the information "volunteered" by Ruiz in

4.

January, 1991. Raucci also testified that he had not told State's witness Jose Roque "what to say" in his police statement, adding that it would have been impossible to feed facts to Roque, since Ruiz provided him with no real information in the January interview and since he had no other information about the killings. According to Raucci, the first account of the events on Howard Avenue came from Morant on a later date in January.[4] Finally, at closing argument, the State highlighted the fact that it was Morant in January, rather than Ruiz in May, who provided the first substantive account. The State facetiously argued that "if [Ruiz] made it up, it's amazing that before he even made it up [Morant] said it."

The fifth amended petition that was decided by Judge Blue charged that Ruiz had falsely implicated Petitioner at trial. The claim was supported chiefly by two pieces of new evidence. The first was a lengthy FBI report which revealed that Ruiz had told the FBI that Morant and Lewis were innocent, that he had lied at their trials and that he had substituted their names for those of the real killers. According to Ruiz, he agreed with Raucci and one, Frank Parese, a reputed drug dealer, to help "set up" Morant and Lewis for the killings because Lewis had failed to pay a large sum of money to Parese. The second was the anticipated testimony of Raucci's former boss, detective sergeant Michael J. Sweeney, who

---

[4]Through his mother's testimony, Morant refuted the truth of the statement that he gave to police in January, 1991. The statement placed Morant in Lewis' car outside the victim's apartment and was at odds with his alibi. At the hearing on the petition, Morant confirmed that the statement was the product of police coercion.

5.

was present when Raucci interviewed Ruiz in January, 1991, and who personally witnessed Raucci provide material facts to Ruiz.

At the hearing on the petition before Judge Blue, Ruiz took the Fifth Amendment, basically foreclosing any chance of proving the hearsay information contained in the FBI report. Detective sergeant Sweeney, however, testified at the hearing, describing the events he observed at the stationhouse between Ruiz and Raucci. Sweeney interviewed Ruiz and concluded that he knew nothing about the killings. Raucci joined the interview and in Sweeney's presence detailed the case to Ruiz. Sweeney twice called Raucci outside the room and reprimanded him, but the improprieties continued when Sweeney left to tend to other matters. Raucci later returned, telling Sweeney that Ruiz was ready to "give up the whole case." Sweeney listened to what Ruiz had to say and then spoke with Ruiz alone. Ruiz told Sweeney that he was not telling the truth and that he was merely parroting what Raucci had told him, so that he could go home. Sweeney exited the room and told Raucci that this was "not a game." Raucci continued to interview Ruiz on his own. Raucci returned a second time, telling Sweeney that Ruiz now wanted "to just say that he overheard these two people talking about the case." Sweeney thereafter permitted Raucci to take a formal statement from Ruiz in the presence of detective Pettolla. At the hearing on the petition, Sweeney identified nearly every material fact contained in Ruiz's May, 1991 statement, as having been given to Ruiz by Raucci in January, 1991. Thus, in addition to calling into question

6.

Ruiz's personal knowledge of the crime, Sweeney's testimony estab-
lished that Ruiz and Raucci lied to the jury about the extent of
their discussions at the police station in January.

At the hearing, Judge Blue fully credited Sweeney's testimony,
but was troubled by the fact that Sweeney had not specifically
heard Raucci give Ruiz the names of Morant and Lewis. Judge Blue
was equally troubled by the fact that Sweeney's view, that Ruiz was
not involved in the crime and that he "knew nothing" about the
killings, could not be squared with Ruiz's statement to the FBI
that he had participated in the crime and had merely substituted
the names of Morant and Lewis for those of the real killers.

Judge Blue erred in his decision and the Appellate Court like-
wise erred in its affirmance. First, Judge Blue failed to recognize
that even if Petitioner could not prove the information contained
in the FBI report, his core claim that Ruiz (and Raucci) materially
lied at trial was still supported and established by Sweeney's tes-
timony. Second, rather than recognizing Sweeney's testimony as a
separate ground for concluding that Ruiz (and Raucci) had lied,
Judge Blue attempted to use Sweeney's testimony to prove Ruiz's as-
sertions to the FBI. This approach could only fail since Sweeney's
testimony and Ruiz's FBI account represented two competing theories
of innocence. Finally, Judge Blue drastically underestimated the
impact that Sweeney's exculpatory testimony would have had on the
jury. See Channer v. State, 54 Conn. App. 620, 631-32, cert.
denied, 251 Conn. 910 (1999)(test is whether the availability of

7.

the new information would have led to a different result"). It is a rare and weighty event when a police officer, let alone a superior, comes forward and reveals the improprieties of an interrogation and the falsity of a witness' testimony. It is probable that after listening to Sweeney, the jury would have concluded not only that Ruiz (and Raucci) lied, but that they were attempting to perpetrate a fraud on the court. The jury would have been well within its right to disbelieve Ruiz's testimony and to reject the State's case.

## 2.) **The Appellate Court Erred In Holding That The Trial Court, Blue, J., Properly Sustained Witness Ovil Ruiz's Invocation Of The Privilege Against Self-Incrimination.**

After Ruiz, who was never charged in the killings, invoked the Fifth Amendment, Judge Blue heard argument. Morant argued that Ruiz effectively waived the privilege when he gave his May statement and when he testified as a State's witness at the 1994 and 1995 trials of Morant and Lewis.[5] The State argued that the invocation was proper because Ruiz could be prosecuted for perjury based on his testimony at Lewis' trial (which fell within the statute of limitations) or his anticipated testimony at the hearing. The State later added, on the related immunity issue, that the State could not grant immunity to a witness who had implicated himself and who, in one FBI interview, had stated that he actually fired the gun. Judge Blue sustained the invocation, holding that Ruiz could still be

---

[5]Prosecutor, now Judge, David Gold testified that Ruiz gave the statement and trial testimony with no agreement in place. According to Gold, there was no implicit understanding with Ruiz's attorney that Ruiz would not be prosecuted. Further, to the best of his recollection, such issues were not even discussed with counsel.

prosecuted for the homicides and for any perjurious testimony at
Lewis' trial and that a response to the questions might dangerous.

Judge Blue erred in his ruling. By providing the statement in
May, 1991 and testifying for the State in 1994 and 1995, Ruiz
waived his right to remain silent. "Waiver of the Fifth Amendment
privilege may be inferred from a witness' course of conduct, or
prior statements concerning the subject matter of the case, without
inquiring into whether or not the witness was aware of the privi-
lege and chose to waive it consciously." Klein v. Harris, 667 F.2d
274, 287 (2d Cir. 1981); see Luna v. Superior Court, 407 Mass. 747,
751, 555 N.E.2d 881 (1990)(waiver extends to later proceedings).

This Court should not permit the State to use Ruiz as both a
sword and a shield. The State cannot use a witness to serve its
needs and to secure a conviction and then turn around and thwart a
petition by arguing that the invocation of the Fifth Amendment
privilege should be upheld because the witness may have been un-
truthful at the original trial or may have actually committed the
killings. Such a position is ludicrous, for it begs the question of
why Petitioner should not be granted a new trial, if not outright
acquitted. Accordingly, this Court should reverse the decision of
the Appellate Court and hold that the trial court erred.

### 3. The Appellate Court Erred In Holding That The Trial Court, Blue, J., Properly Refused To Order The State To Grant Ruiz Immuni- ty And Also Properly Refused To Grant Ruiz Immunity On Its Own.

After Judge Blue sustained Ruiz's invocation of the privilege,
Petitioner moved the Court under the state and federal due process

F22

and compulsory process clauses to order the State to grant Ruiz immunity or, in the alternative, to grant Ruiz immunity on its own. Despite ample federal authority, the Court declined to so act. Ruiz thus left the hearing without answering any substantive questions.[6]

Judge Blue erred in so ruling. The State's threat of prosecution at the hearing, when there had been no such threat for nearly ten years, amounted to misconduct and discouraged Ruiz from testifying. Also, per the testimony of Ruiz' prison counselor, Ruiz also received a call before the hearing from possibly the prosecutors' office. When Ruiz hung up the phone, he stated "they're trying to keep me quiet. They don't want me to talk, but I'm going to talk." See United States v. Montoya, 945 F.2d 1068, 1078 (9th Cir. 1991) ("[I]f it can be shown that there has been misconduct by the prosecutor, in intentionally causing a witness to invoke his Fifth Amendment privilege, ... due process requires immunity to be granted."); United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992); Blisset v. LeFevre, 924 F.2d 434, 441-42 (2d Cir. 1991); United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988); United States v. Turkish, 623 F.2d 769, 774-79 (2d Cir. 1980), cert. denied, 449 U.S. 1077 (1981); Government of Virgin Islands v. Smith, 615 F.2d 964, 970-74 (3d Cir 1980)(judicially crafted immunity permissible).

V.    CONCLUSION

WHEREFORE, Petitioner requests that certification be granted.

---

[6]At the hearing before Judge Hadden, Ruiz stated he would have "no problem answering any ... questions if ... given ... immunity." The issue became moot when a mistrial was ordered on count one.

RESPECTFULLY SUBMITTED,
Stefon Morant, Petitioner

By *Michael A. Fitzpatrick*

Michael A. Fitzpatrick, Esq.
Park City Plaza
10 Middle Street, 11th FL
Bridgeport, CT 06604
Juris No. 306699
Tel: 203-334-4653
Fax: 203-224-1591

## CERTIFICATION

This is to certify that a copy of the foregoing was hand

delivered and/or mailed, postage prepaid, on March 14, 2002 to:

Mr. Michael Dearington
State's Attorney
State's Attorney's Office
235 Church Street
New Haven, CT 06510

Mr. Christopher T. Godialis
Deputy Assistant State's Attorney
Appellate Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT 06067

Mr. Stefon Morant
Inmate No. 129982, J-37
Ellis MacDougall C.I.
1153 East Street South
Suffield, CT 06080

*Michael A. Fitzpatrick*
Michael A. Fitzpatrick, Esq.